# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**REINHART BOERNER VAN DEUREN S.C.,**

        Third-Party Plaintiff,

**and**                                   **Case No. 10-C-753**

**CHICAGO TITLE INSURANCE COMPANY,**

        Cross-Claimant.

      **v.**

**CARL JOHANN FREER,**

        Third-Party Defendant/Cross-Claim Defendant.

---

# DECISION AND ORDER

---

    This Decision and Order addresses the claims of Third-Party Plaintiff Reinhart Boerner Van Deuren S.C. ("Reinhart") and Cross-Claimant Chicago Title Insurance Company ("Chicago Title") against Third-Party Defendant/Cross-Claim Defendant Carl Johann Freer ("Freer") for indemnification and subrogation, and Reinhart's claim against Freer for his obligations under an assignment of rights made by Timur Mohamed ("Mohamed") as part of a settlement agreement between Reinhart and Mohamed. The Court conducted a bench trial on the claims on July 29, 2013. The parties filed post-trial briefs addressing their positions on the disposition of the claims in this action. (ECF Nos. 191, 192.)

    On October 13, 2013, the Court issued a Decision and Order permitting Reinhart

to file a second amended Third-Party Complaint, adding a claim to recover the balance due from Freer to Mohamed under the Short Term Loan Agreement, Promissory Note, Personal Guarantee, and Short Term Deed of Trust (collectively the "Loan Documents"). (ECF Nos. 193, 194.)  Pursuant to the Court's request, the parties filed a joint statement regarding whether any additional proceedings were required before the Court issued its decision in this action.  (ECF No. 202.)  Freer's response included a request for additional time to respond, which was granted.  (ECF No. 203.)  Reinhart and Chicago Title state that no further proceedings are required.  Freer maintains that the record establishes he cannot and should not be liable to Reinhart as a legal and equitable matter.  (ECF No. 205.)  He further states that if the Court does not enter judgment in his favor on Reinhart's third party claims, he should be allowed a trial on the merits.

At the opening of the trial, the Court indicated that there was "time to hear the evidence that's going to be put in.  The Court would like to hear all the evidence on all of these things."  (Tr. 13.) (ECF No. 201.)  Thus, the parties were on notice that the Court would consider evidence on what were at the time Reinhart's proposed additional claims.  Although Freer asserts that the added claims should be tried, he has not specified what additional evidence he would like to offer.  Therefore, pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, this Decision and Order sets forth the Court's findings of fact based on the stipulated facts and the testimony and evidence presented at trial, and its conclusions of law on all outstanding claims.

Jurisdiction over Reinhart's third-party claims against Freer is afforded by 28 U.S.C. §§ 1332(a) and 1367.  Jurisdiction over Chicago Title's cross claims against Freer

is afforded by 28 U.S.C. § 1367. (See Court's June 26, 2013, Decision and Order at 5-6.) (ECF No. 176.)

## BACKGROUND

A brief summary of the factual and procedural history of this action provides context for the Court's findings of fact and conclusions of law. Although no longer a party, Mohamed commenced this action in September 2010 by filing a complaint against Reinhart, which represented Mohamed with respect to a $1 million loan agreement he entered into with Blowfish Works Inc. ("Blowfish") in January 2007, and Chicago Title, which was to record a deed of trust on Freer's California residence to secure the loan. (ECF No. 1.) Freer was an officer of Blowfish, personally guaranteed the loan, and received the loan proceeds. When Mohamed filed his action, Blowfish had defaulted on the loan, and Freer had breached his personal guarantee and sold his California residence upon which Mohamed's deed of trust had not been recorded. Mohamed claimed that Reinhart and Chicago Title had breached their respective obligations to him. Reinhart filed a third-party Complaint against Freer. (ECF No. 86.) Chicago Title filed a cross-claim against Freer. (ECF No. 106).

While summary judgment motions were pending, Reinhart settled with Mohamed. After the Court issued its summary judgment decision, Reinhart and Chicago Title settled their cross-claims against each other. (ECF No. 178.) Pending are claims by Reinhart and Chicago Title for indemnification and subrogation against Freer (ECF Nos. 106, 194), and Reinhart's claim to enforce Freer's obligations under an assignment of rights made by Mohamed as part of a settlement agreement between Reinhart and Mohamed.

## Findings of Fact

Mohamed is a citizen and resident of Barbados. Reinhart is a corporation formed under the laws of the State of Wisconsin, with its principal place of business in Milwaukee, Wisconsin. Chicago Title is a corporation formed under the laws of State of Nebraska, with its principal place of business in Omaha, Nebraska. Freer is a citizen of Sweden who is a resident of the United States and is domiciled in Colorado with a last known address of 62 Prospector Lane, Aspen, Colorado. (Trial Ex. 20, 7-8, 10.)

In January 2007, Mohamed agreed to provide short term funding of up to $1 million to Blowfish and executed the Loan Documents in conjunction with the loan.

Under the terms of the Short Term Loan Agreement executed January 15, 2007, Mohamed agreed to loan Blowfish up to $1 million. (Trial Ex. 3.) The money was to be paid in installments, and total payments by Mohamed were not to exceed $500,000 in any single calendar month. Pursuant to paragraph 4.1, Blowfish agreed to repay "all monies advanced by [Mohamed] together with any interest due" under the agreement. Blowfish is referred to as the "Borrower," and Freer is referred to as the "Guarantor." Freer was an officer of Blowfish, and signed in that capacity and in his personal capacity as guarantor of the loan. Paragraph 7.1 provides as follows:

> BORROWER AND GUARANTOR AGREE THAT ALL
> ACTIONS OR PROCEEDINGS IN ANY MANNER
> RELATING TO OR ARISING OUT OF THIS NOTE OR
> OTHER LOAN DOCUMENTS ASSOCIATED WITH
> THIS NOTE MAY BE BROUGHT ONLY IN COURTS OF
> THE STATE OF WISCONSIN LOCATED IN DOOR
> COUNTY OR THE FEDERAL COURT FOR THE
> EASTERN DISTRICT OF WISCONSIN AND THE
> BORROWER AND GUARANTOR CONSENTS TO THE

JURISDICTION OF SUCH COURTS. THE BORROWER WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH COURT AND ANY RIGHT IT MAY HAVE NOW OR HEREAFTER HAVE TO CLAIM THAT ANY SUCH ACTION OR PROCEEDING IS IN AN INCONVENIENT COURT.

Pursuant to the January 15, 2007, Promissory Note, Freer guaranteed that Blowfish would repay to Mohamed the sum of $1,000,000, with interest accruing on the principal balance at a rate of 5% per annum payable at maturity, or immediately upon an event of default, and at a rate of 18% per annum after maturity until paid. Freer executed the Promissory Note in his capacity as an officer of Blowfish and in his personal capacity as guarantor. Blowfish agreed to "pay to the order of [Mohamed] the principal sum of up to One Million Dollars ($1,000,000.00[)]" plus interest as provided in the Promissory Note. (Trial Ex. 4.)

Under Section 2 of the Promissory Note, the unpaid principal and all accrued and unpaid interest were due and payable to Mohamed, at the latest, on December 30, 2007. Under Section 3, Freer agreed to provide security in the form of a valid "charge" that would be registered on his home at 1744 Stone Canyon Road, Bel Air, California. Under Section 4, the "unpaid principal and all accrued but unpaid interest" on the Promissory Note "shall, upon written notice by [Mohamed] to the Borrower and or Freer, shall [sic] mature and become immediately payable if (a) *[Freer] shall fail to provide perfected interest in the security or insufficient security [or]* (b) a default or breach occurs under any agreement securing the Borrower's obligations under this Note." (Emphasis added.) Section 9(a) provides as follows:

BORROWER AND GUARANTOR AGREE THAT ALL ACTIONS OR PROCEDINGS IN ANY MANNER RELATED TO OR ARISING OUT OF THIS NOTE OR OTHER LOAN DOCUMENTS ASSOCIATED WITH THIS NOTE MAY BE BROUGHT ONLY IN COURTS OF THE STATE OF WISCONSIN LOCATED IN DOOR COUNTY OR THE FEDERAL COURT FOR THE EASTERN DISTRICT OF WISCONSIN AND THE BORROWER AND GUARANTOR CONSENTS TO THE JURISDICTION OF SUCH COURTS. THE BORROWER WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH COURT AND ANY RIGHT IT MAY HAVE NOW OR HEREAFTER TO CLAIM THAT ANY SUCH ACTION OR PROCEEDING IS IN AN INCONVENIENT COURT.

Freer also executed a Personal Guarantee which guaranteed repayment of the loan. (Trial Ex. 5.)  The Personal Guarantee states that the obligation to repay the funds loaned by Mohamed to Blowfish "is equally binding upon [Blowfish] and I [Freer]." (*Id.*)  Freer stated that his personal guarantee was "supported by a valid secured charge on the property [located at] 1744 Stone Canyon Road, Bel Air, Los Angeles[,] California." (*Id.*)  This was Freer's personal residence, and he delivered to Mohamed a Short Form Deed of Trust (the "Deed of Trust") on that residence.  (See Trial Ex. 6.)

Blowfish received $1 million from Mohamed pursuant to the Loan Documents, which was disbursed in six installments.  (See Trial Ex. 7.)  The last installment was disbursed on February 22, 2007.  (*Id.*)

In June 2007, Freer entered into a contract for the sale of his California residence. The sale closed on August 10, 2007.  At closing, despite the fact that the Deed of Trust had not been registered (recorded), Freer knew he had promised to provide a valid registered charge on his home.  The sale price was $5,460,000.  $882,657.46 of the

proceeds from the sale should have been available to pay Mohamed. Instead, Freer diverted those proceeds as follows:

> (1) $258,351.46 directly to himself;
>
> (2) $500,000 to Goldrush, Ltd. ("Goldrush"), a limited liability company organized by Freer (Trial Ex. 12), to satisfy a lien filed after Freer entered into the contract to sell. Goldrush, in turn, paid the $500,000 to Freer;
>
> (3) $24,000 to Blue Chip Movers; and,
>
> (4) $100,306 to Beverly Loan Company.

(Trial Ex. 9.) Mohamed received none of the sales proceeds. Blowfish and Freer have not paid any portion of the principal or interest due and owing on the loan.

Reinhart and Mohamed had an attorney-client relationship with respect to Mohamed's loan to Blowfish. Mohamed hired Reinhart to record the Deed of Trust, and Reinhart hired Chicago Title to assist it. Reinhart attorney Anthony Handzlik ("Handzlik") admitted that Reinhart was instructed to record the Deed of Trust and that it was his responsibility to ensure that it was properly recorded.

Chicago Title employee Corlis Chevalier ("Chevalier") was produced as the person most knowledgeable about the company's procedure for handling requests to record deeds of trust. Chevalier conceded that (1) Chicago Title received instructions to record the Deed of Trust as soon as possible, (2) Chicago Title agreed to record it, and (3) Chicago Title should have, but did not, advise Reinhart that it could not fix problems with it. Chicago Title mistakenly placed the original Deed of Trust in a closed file, and it was not recorded.

Handzlik expected that Chicago Title would record the Deed of Trust, but admitted that he did not follow up to make sure it actually had been recorded. Reinhart admitted that it faced exposure based upon the failure to record the Deed of Trust.

By a letter dated September 7, 2007, Mohamed, through Handzlik, provided written notice to Freer that Blowfish was in default under the terms of the Promissory Note because Freer had "failed to provide the required perfected interest in the security." (Trial Ex. 8.) The letter demanded immediate payment by Blowfish of the unpaid principal and all accrued interest and stated further that to the extent Blowfish did "not fulfill its obligations under the [Promissory] Note, . . . Mohamed hereby demands that you, as Guarantor of the [Promissory] Note, immediately remit payment of the unpaid principal and accrued, unpaid interest on the [Promissory] Note." (*Id.*)

Mohamed commenced this lawsuit against Reinhart and Chicago Title, seeking as damages the sum of $1 million plus unpaid and accrued interest under the Loan Documents. In this lawsuit Mohamed never asserted any claims against Freer, although Freer received the proceeds and personally guaranteed the $1 million loan. Freer did not become a party to this action until July 20, 2012, when he was served with Reinhart's Third-Party Complaint alleging claims for indemnification and subrogation. (ECF No. 89.) Chicago Title filed cross-claims for contribution/indemnification and subrogation against Freer.

In March 2013, Reinhart and Mohamed entered into a Covenant Not to Sue and Assignment (the "Covenant") whereby Reinhart agreed to pay the sum of $800,000 to Mohamed (the "Settlement Payment"). (Trial Ex. 10.) In Paragraph 2, Mohamed

acknowledges that his receipt of the Settlement Payment "discharges Freer's obligations with respect to the Loan to the extent of the amount of the Settlement Payment." In Paragraph 3, Mohamed assigns to Reinhart "any and all claims, causes of action, rights, and interests of whatsoever kind or nature that he has or may have against Chicago Title, Freer, and any other person or entity arising out of any loss, injury or damage sustained by him in connection with the allegations in the Lawsuit or in connection with any and all documents referenced in or attached to the Complaint filed in the Lawsuit." Paragraph 3 further states that "Mohamed reserves any and all claims against Freer other than the assigned claims." Paragraph 5 states: "The parties to the Agreement acknowledge and agree that the Agreement is a compromise and resolution of disputed claims, and neither the execution of the Agreement nor the exchange of consideration required by the Agreement shall be construed as an admission of any liability, wrongdoing, or impropriety whatsoever by the parties." Paragraph 9 states that the Agreement shall be governed by Wisconsin law, without regard to any conflict of law provision. Mohamed received $800,000 pursuant to the Covenant on March 25, 2013.

On March 27, 2013, Reinhart filed a stipulation and proposed order for dismissal of Mohamed's claims against it. The Court entered an order dismissing Mohamed's claims against Reinhart with prejudice on March 28, 2013. (ECF No. 129).

In June 2013, Reinhart and Chicago Title reached an agreement settling their claims against each other, but preserving their claims against Freer. The parties agreed that Chicago Title would pay the sum of $475,000 to Reinhart; all claims between Reinhart and Chicago Title (including Mohamed's claims against Chicago Title that

Reinhart received by assignment) would be dismissed with prejudice; and Reinhart and Chicago Title reserved their respective rights and claims against Freer in this action. Chicago Title subsequently paid Reinhart $475,000 in fulfillment of the settlement.

Freer admits he owes Mohamed $1 million (Trial Ex. 20, 86:4-5.) and that he had "potentially other outstanding transactions [with Mohamed] that may . . . amount to any deficit, but those are unrelated to this transaction." (*Id*. at 87.) Freer indicated that the outstanding transaction had to do with the "arrest of [a] vessel." (*Id.* at 88.)

The total amount due on the Promissory Note through the date of the trial was $1,906,004.43. (Trial Ex. 21.) That amount includes a reduction for the $800,000 recouped by Mohamed on March 25, 2013, when Reinhart remitted the settlement payment. Interest continues to run on the outstanding balance at 18% per annum.

## Analysis

By their claims for equitable indemnification and subrogation, both Reinhart and Chicago Title want to recover from Freer the amounts they paid to Mohamed.

## Indemnification

Indemnity "shift[s] the loss from one person who has been compelled to pay to another who on the basis of equitable principles should bear the loss." *See Brown v. LaChance,* 165 Wis. 2d 52, 64, 477 N.W.2d 296, 302 (Wis. 1991) (quoting *Kutner v. Moore*, 159 Wis. 2d 120, 126, 464 N.W.2d 18, 20 (Wis. Ct. App. 1990)). "[A] right of indemnity has been said to exist whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does

not join." *Kjellsen v. Stonecrest, Inc.,* 47 Wis. 2d 8, 11-12, 176 N.W.2d 321, 323 (Wis. 1970). Equitable indemnification "shifts the entire loss from one person who has been compelled to pay it to another who, on the basis of equitable principles, should bear the loss." *Estate of Kriefall v. Sizzler USA Franchise, Inc.,* 342 Wis. 2d 29, 54, 816 N.W.2d 853, 865 (Wis. 2012) (quoting *Swanigan v. State Farm Ins. Co.*, 99 Wis. 2d 179, 196, 299 N.W.2d 234 (Wis. 1980)).

Freer asserts that a party may seek indemnity only when it has no liability to the plaintiff. (Freer's Post-Trial Br. at 7) (ECF No. 191.) (citing *Brown,* 477 N.W.2d at 302). Reinhart and Chicago Title maintain that Wisconsin Supreme Court cases decided before and after *Brown* contradict Freer's argument.

"When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin,* 656 F.3d 610, 626 (7th Cir. 2011). In *Swanigan*, 222 N.W.2d at 242, and more recently in *Estate of Kriefall,* 816 N.W.2d at 866, the Wisconsin Supreme Court held that equitable indemnification shifts the loss from one "compelled to pay" to one who should, in equity, bear the loss. Rather than evaluating whether Reinhart and Chicago Title are free of any liability to Mohamed, the Wisconsin Supreme Court would focus on whether they joined in the act that exposed them to liability. If not, then they are entitled to indemnity:

> "[A] party seeking indemnification must show that the obligation to pay should be shifted to one who in equity should bear the loss." See [*Kjellsen,* 47 Wis. 2d at 11-12]; *Swanigan,* 99 Wis. 2d at 196. Here, the circumstance that gave rise to [defendant's] claim of equitable indemnification from [plaintiff] was [defendant's] exposure to liability for [plaintiff's] delivery of contaminated meat, *an act that*

- 11 -

*[defendant] did not join.*

*Estate of Kriefall,* 816 N.W.2d at 866. (Emphasis added.); *see also Kjellsen* 176 N.W.2d at 323 ("[A] right of indemnity has been said to exist whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join. The rule proposed in the *Restatement of Restitution* makes no specific reference to contract and appears to be based on principles of equity; it provides that a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor (indemnitee) is barred by the wrongful nature of his conduct." 41 Am. Jur. 2d, *Indemnity,* p. 688, sec. 2.)

The two basic elements of equitable indemnity are a person's payment of damages and a wrongful act by another in which the person does not join. When Reinhart settled with Mohamed for $800,000 it involuntarily paid a portion of Freer's debt to Mohamed. *See Estate of Kriefall,* 816 N.W.2d at 866. The settlement did not involve any determination as to Reinhart's liability to Mohamed. The Covenant explicitly states that it shall not be construed as an admission of any liability, wrongdoing, or impropriety whatsoever by the parties. Contrary to Freer's arguments, Reinhart's settlement with Mohamed does not establish any negligence on Reinhart's part. Additionally, its admission of exposure does not establish any liability on its part.

Furthermore, Freer has ongoing duties under the Loan Documents to pay Mohamed. And Freer, as guarantor of the promissory note, agreed to repay the loan and

any interest upon maturity or upon default. The sale of his California residence constituted a default. Under Cal. Civ. Code § 1217, "[a]n unrecorded instrument is valid as between the parties thereto and those who have notice thereof." Thus, the Deed of Trust between Freer and Mohamed was valid under California law even though it had not been recorded. Freer's obligations required that, after paying the three senior encumbrances, he pay the remaining sale proceeds to Mohamed.

The evidence also establishes that Freer intentionally diverted money away from the sale of his home rather than paying any of the loan proceeds to Mohamed. This satisfies the elements of conversion under Wisconsin law. *See Bruner v. Heritage Cos.,* 225 Wis. 2d 728, 736, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999) (stating "[t]he elements of tortious conversion comprise: (1) intentionally controlling/taking property belonging to another; (2) controlling/taking property without the owner's consent; and (3) those acts resulting in serious interference with the rights of the owner to possess the property. *See* Wis. J I — Civil 2200. Freer admits that he owes Mohamed $1 million. Reinhart was not a party to the loan and had no obligations to repay Mohamed under the terms of the Loan Documents.

Freer's failure to account for Mohamed's encumbrance at closing and his admitted failure to repay any portion of the principal and interest under the loan set this lawsuit in motion and exposed Reinhart to liability for the principal and interest. Reinhart also played no role in the wrongful conduct by Freer that was in violation of the Deed of Trust between Mohamed and Freer, or in Freer's conversion of Mohamed's funds. Therefore, the Court concludes that Reinhart has established the elements of equitable

indemnification and should recover from Freer. Reinhart paid Mohamed $800,000 in settlement which gave Freer an $800,000 credit for his obligations under the loan documents. However, Reinhart recouped a portion of that money under Chicago Title's settlement when it received $475,000. Thus, Reinhart has established that Freer should equitably indemnify it for $325,000.

The evidence with respect to Chicago Title is similar. Chicago Title was not a party to the loan and had no obligation to repay Mohamed under the terms of the Loan Documents. Chicago Title was not involved in Freer's violation of the Deed of Trust between himself and Mohamed when he failed to account for Mohamed's encumbrance at closing, or his conversion of the funds he owed to Mohamed. Freer's conduct and his failure repay the $1 million loan exposed Chicago Title to liability to Mohamed, who filed this action against it seeking recovery of the principal and interest due from Blowfish under the loan and from Freer under his personal guarantee. Chicago Title's agreement to pay $475,000 to Reinhart in settlement was not voluntary because it was made under the threat of potential liability. Because Chicago Title did not join in Freer's wrongdoing, equity requires that Freer indemnify Chicago Title in the amount of $475,000.

## Subrogation

Subrogation is akin to indemnification in that it seeks to recoup the total payment that the party seeking subrogation has made. *Estate of Kriefal*, 816 N.W.2d at 865. "Subrogation rights may arise in three ways: (1) contractual subrogation, (2) statutory subrogation, and (3) equitable subrogation." *Id.* at 865 (citations omitted).

"Upon payment, the person who made the payment stands in the shoes of the person for whom payment was made." *Id.* at 871 (citing *Orlowski v. State Farm Mut. Auto. Ins. Co.,* 339 Wis. 2d 1, 810 N.W.2d 775 (Wis. 2012)). Both indemnification and subrogation require that a person seeking to recover has made payment. *Id.*

Reinhart made payment through its settlement with Mohamed. However, the $800,000 Reinhart paid Mohamed represented a significant portion of the money that he loaned to Blowfish. Freer also defaulted on his personal guarantee of the $1 million loan, and he diverted to his own benefit more than $882,000 of the proceeds from the sale of his California home. Freer retained those benefits and paid Mohamed nothing. Freer also admits that he owes Mohamed the money. Having paid a debt for which Freer was primarily liable and should satisfy in equity and good conscience, Reinhart is subrogated to Mohamed's rights to recover what it paid to Mohamed and is entitled to recover from Freer the amounts it paid to Mohamed: $325,000 ($800,000 less the $475,000 it recouped from Chicago Title).

As for Chicago Title, Freer bears primary legal responsibility to repay Mohamed the principal and interest due and owing under the Loan Documents. Chicago Title's agreement to pay $475,000 in settlement was not voluntary because it was made under the threat of potential liability, and that settlement confers a benefit on Freer that it would be inequitable for him to retain. *Kennedy-Ingalls Corp. v. Meissner*, 5 Wis. 2d 100, 105, 92 N.W.2d 247, 250 (Wis. 1958) (citing *Restatement of Restitution* § 1, cmt. B) ("A person confers a benefit upon another if he . . . *satisfies a debt or a duty of the other*, or in any way adds to the other's security or advantage. He confers a benefit not only where

he adds to the property of another, but also where he saves the other from expense or *loss*.") Equity requires that Freer bear the costs of any repayment of the loan. Freer will be unjustly enriched unless Chicago Title is awarded a judgment against him for all amounts it paid in settlement. Chicago Title is entitled to recover $475,000 from Freer based upon equitable subrogation.

### Reinhart's Claims Under Mohamed's Assignment to the Firm

Reinhart maintains that it has the right to recover the outstanding balance due and owing under the Loan Documents from Freer based on Mohamed's March 2013 assignment of rights as a part of the settlement agreement between it and him. Although Freer admits he owes the money to Mohamed, he counters that the language of the Covenant is ambiguous and must be construed against Reinhart. He contends that paragraph 3 is internally inconsistent because Mohamed "assigned all of his claims against Freer to Reinhart" while at the same time reserving some claims against Freer.

Contract interpretation and whether a contract is ambiguous are both questions of law. *Huml v. Vlazny,* 293 Wis. 2d 169, 179-80, 716 N.W.2d 807, 812 (Wis. 2006). The lodestar of contract interpretation is the intent of the parties. *Id.* at 820. In ascertaining the intent of the parties, contract terms should be given their plain or ordinary meaning. *Id.* If the contract is unambiguous, the attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence. *Id.*

Under paragraph 3 of the Covenant, Mohamed assigned to Reinhart "any and all claims, causes of action, rights and interests of whatsoever kind or nature that he has or may have against . . . Freer . . . rising out of any loss, injury or damage sustained by him

- 16 -

in connection with *the allegations set forth in the Lawsuit or in connection with any and all documents referenced in or attached to the Complaint filed in the Lawsuit (the 'Assigned Claims').*"  (Trial Ex. 10, ¶ 3.) (Emphasis added).

Freer argues that paragraph 3 purports to assign "all of [Mohamed's] claims against Freer," however, his contention is not supported by the plain and ordinary meaning of the paragraph, which limits the scope of the assignment of Mohamed's claims to those arising in connection with the loan that is the subject of this lawsuit.  The Loan Documents (Trial Exs. 3, 4, 5) are referenced repeatedly in and attached to the Complaint filed by Mohamed to commence this action.  (Compl., ¶¶ 8-14, 16, 23-25 & Exs. A, B, D.)

Furthermore, Freer has stipulated that although Blowfish received $1 million from Mohamed pursuant to the Loan Documents, neither Freer nor Blowfish has repaid any portion of the principal or interest due and owing under the loan.  (Stmt. of Uncontested Facts, ¶¶ 22, 28) (ECF No. 184.)  These undisputed facts give rise to a claim that Mohamed assigned to Reinhart under paragraph 3.  As the assignee of Mohamed's claim, Reinhart has the right to enforce Freer's contractual obligation to repay the outstanding loan balance.

The final sentence of Paragraph 3, which states that Mohamed "reserves any and all claims against Freer other than the Assigned Claims," recognizes that Mohamed did not assign any claims he has or may have against Freer arising out of other business dealings between them.  It does not create any ambiguity concerning the scope of the Assigned Claims.  Because there is no ambiguity in the language of Paragraph 3, no

additional evidence was necessary to "prove up the rights Mohamed assigned." (Freer's Post-Trial Br. 5).

Freer also contends that even if paragraph 3 is not ambiguous, Reinhart did not meet its burden at trial because it failed to establish the actual amount of the assignment claim. However, Reinhart's trial exhibit 21 is sufficient to establish its damages by the greater weight of the credible evidence, to a reasonable degree of certainty. *See D. L. Anderson's Lakeside Leisure Co., Inc. v. Anderson,* 314 Wis. 2d 560, 599, 757 N.W.2d 803, 811 (Wis. 2008) (referring to the standard instruction on damages in general).

The loan was received in installments, so Reinhart began its calculation of the 5% interest due on the Promissory Note on February 22, 2007, the date that Blowfish received the final installment of the $1 million principal amount. Interest in the amount of $23,013.70 accrued between February 22 and August 10, 2007.

Freer breached the terms of the Promissory Note and his Personal Guarantee on August 10, 2007, by failing to repay Mohamed out of the proceeds from the sale of his California residence. Freer's breach constituted a default which caused the loan to mature and became immediately payable. Mohamed provided written notice of the default to Freer and demanded payment under Freer's guarantee. Interest began accruing on the balance of the loan at the rate of 18% per annum on August 11, 2007, the day after the loan matured. Interest in the amount of $1,572,319.51 accrued on the outstanding balance of $1,023,013.70 between August 11, 2007, and March 25, 2013. The total balance as of March 25, 2013, was $2,595,333.21.

Effective March 25, 2013, Freer received a credit of $800,000 based on

Mohamed's receipt of the settlement payment from Reinhart. That $800,000 credit reduced the outstanding balance to $1,795,333.21. Interest continues to accrue on that amount at 18% per annum which is a daily rate of $885.37. Interest in the amount of $423,206.86 accrued on the outstanding balance of $1,795,333.21 between March 26, 2013, and the July 16, 2014, date of entry of judgment, for a total amount due under the Loan Agreement of $2,218,540.07.

Mohamed assigned his right to collect all the remaining outstanding amounts including interest to Reinhart. Reinhart, having proven the remaining amounts, is entitled to recover the $2,218,540.07, that was due on the promissory note through the date of the entry of the judgment.

### Availability of Legal and Equitable Remedies

Freer also contends that Reinhart does not qualify for equitable recovery because it has a remedy at law, citing *Ash Park, LLC v. Alexander & Bishop*, *Ltd.,* 317 Wis. 2d 772, 779, 767 N.W.2d 614, 618 (Wis. Ct. App. 2009). He asserts that Reinhart claims Mohamed assigned his rights to it, yet Reinhart also claims it is entitled to subrogation and indemnification.

Reinhart counters that *Ash Park* does not support Freer's argument, his contention blurs the distinction between causes of action and relief, the relief is not equitable because it is in the form of money damages, the rule applies only when non-monetary relief is sought and, even if Reinhart were required to show no remedy at law, it can. Specifically, Reinhart states that because Freer's contractual duty to repay the $800,000 was discharged by Reinhart's payment of that amount to Mohamed, it has no remedy at

law to recover that amount from Freer under the Loan Documents and thus may seek equitable indemnification and subrogation.

*Ash Park* held that the trial court did not err in granting a real estate vendor the equitable remedy of specific performance when the vendor had a remedy at law for damages against purchaser. *Id*. *Ash Park* does not support Freer's position. Moreover, Reinhart's final contention persuades the Court that to the extent Reinhart must show it has no adequate remedy at law, it has done so. Thus, Reinhart's recovery under the Loan Documents does not preclude it from recovering the portion of the monies it paid to Mohamed under the theories of equitable indemnification and subrogation.

## Conclusion

Based on the uncontested facts and the testimony and evidence received at trial, the Court concludes that Freer is liable to Reinhart in the amount of $2,543,540.07: the sum of $325,000 (Reinhart's $800,000 settlement payment to Mohamed less the $475,000 it received in settlement from Chicago Title) plus $2,218,540.07 (the outstanding balance owed by Freer under the Loan Documents with prejudgment interest through the date of the entry of judgment), plus allowable costs. The Court further concludes that Freer is liable to Chicago Title in the amount of $475,000 plus allowable costs.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Reinhart **SHALL RECOVER $2,543,540.07** from Freer based on its claims for

indemnification and subrogation and Mohamed's March 2013 assignment of his claims arising out of this action, plus allowable costs;

Chicago Title **SHALL RECOVER $475,000** from Freer based on its claims of indemnification and subrogation, plus allowable costs;

This action is **TERMINATED;**

The Clerk of Court is **DIRECTED** to enter judgment accordingly; and

Reinhart and Chicago Title may file a Bill of Costs with the Clerk of Court.

Dated at Milwaukee, Wisconsin, this 16th day of July, 2014.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge